May it please the Court, Rupali Desai on behalf of Plaintiff Appellant Jermaine Dante Griffin. The issue before this Court is a very narrow one. Did Mr. Griffin exhaust the claims that form the basis of his Federal 1983 action? There's some similarity here in all these cases. This actually is PLRA day at the Ninth Circuit, apparently, because we had eight cases involving the PLRA, and one had to be continued because of counsel's illness, but everything else, they're all related. So, please proceed. In other words, the issue before this Court in this case is whether Mr. Griffin, in his three timely grievances, set forth and alerted the jail officials to the basic nature of his claims, the same claims that he later included in his complaint. Sheriff Joe Arpaio and the jail officials contend that he did not exhaust his claims because they say that his complaint includes new and entirely different claims than he grieved in his administrative process. This position is not supported by the record or the law. The fact of the matter is, Mr. Griffin stated the same factual circumstances in his three timely grievances as he did in his complaint, namely, that he had a dangerous bunk assignment, he couldn't safely access the top bunk, and he was sustaining injuries as a result. The law interpreting the exhaustion requirements of the PLRA provide that an inmate need only object intelligibly to some asserted shortcoming and alert the jail officials to a general problem for which they can – for which the inmate seeks redress. The PLRA does not require that an inmate use magic words or that he match his specific facts to legal claims. And that's consistent with the purpose or one of the main purposes of the PLRA, which is to afford jail officials time and opportunity to address inmate complaints internally before they're faced to defend a claim in court. Ginsburg. Go ahead, Justice Kagan. Do we have to ignore the facts? No, Your Honor. I think that the facts underlying the grievance and the complaint that the Court should – Was he assigned to a bottom bunk? No, Your Honor. He was assigned to a bottom bunk for a few – at the very beginning when he entered as a pretrial detainee, he complained that he could not access the top bunk. This was before he even filed a grievance. The jail put him on a bottom bunk for two days and then again changed his assignment to a top bunk, at which time he injured himself and initiated his grievance procedure in the jail. Did – was there a court order to be on the bottom bunk? There was a medical order. Medical order. After he had initiated his grievance procedure, the sheriff and the jail officials did order Mr. Griffin to be assigned to a lower bunk, but they never actually executed the order. But this came well after he had initiated his grievance procedure. I see. Applying the exhaustion requirements set forth in the law to the instant case, there are at least three reasons why this Court should reverse the lower court's dismissal of Mr. Griffin's complaint and hold that he exhausted his claims. First, the Court need only compare the words in Mr. Griffin's grievances to his complaint to know that he was complaining about the same problem. This is not a case where Mr. Griffin grieved about his bunk assignment and later filed a complaint about being assaulted in jail. The problems that he raised throughout his grievances and in his complaint are the same. He couldn't safely access the top bunk, and he was sustaining injuries as a result. But even if this Court weren't to afford a liberal construction to his words, it's not a close question whether or not Mr. Griffin exhausted his claims. He complied with the precise procedure set forth by Sheriff Joe Arpaio and the jail officials. The grievance form requires that a prisoner, the inmate, set forth and briefly describe his problem and propose a remedy. Mr. Griffin did just that. Now Sheriff Joe Arpaio claims that Mr. Griffin should have done more, that he should have set forth every variation or nuance arising from his basic complaint that he could not safely access the top bunk. They don't argue that they would have done anything differently had he set forth more specific facts. And in any case, he's not required to do so under the law. So his failure to set forth specific facts and articulate legal theories does not render his claim unexhausted. And finally, and probably most importantly, it's clear that Sheriff Joe Arpaio and the jail officials knew and understood the nature of Mr. Griffin's problem, because they came up with the solution. They knew that he couldn't access the top bunk, and so they wrote a medical order assigning him to a lower bunk, but they never actually executed that order. It's disingenuous for Sheriff Joe Arpaio to now argue after the fact that they had no idea or were not on notice of the specific problem that Mr. Griffin set forth in his complaint. Thank you. If the Court permits, I'd like to reserve the remainder of my time for rebuttal. Thank you. May it please the Court. Bruce White on behalf of Defendants Appellees Arpaio and Rykelkar. At the outset, I need to correct, I think, an inadvertent misstatement that counsel made. She argued that the reassignment issue from the lower to the upper bunk occurred after Mr. Griffin began his grievance procedure. That is not correct. In fact, her reference to three grievances, I think she meant to say three appeals of a single grievance. In this case, there is one grievance that was filed on December 1st, or at least it was filed on December 1st of 1999. The events surrounding, and this is referred to in the briefing, surrounding the alleged reassignment from the lower to the upper bunk, that occurred in May of 1999. There was not a grievance filed in May. From May to December, no grievance was filed. The grievance was filed December 1st asking for a ladder. There is no reference in the December grievance to the reassignment from the lower to the upper bunk. There is no reference to the medical, to the medication that's described in the complaint, the Thorazine and so on. The district court, Your Honors, correctly identified the question. Whether the grievance, the one grievance that was filed in December of 1999, was different than the lawsuit. And the district court correctly analyzed them and concluded that the grievance related to the installation of a ladder. It says, solution, install permanent footholds or ladders. The lawsuit alleges deliberate indifference to the medical needs and the safety of Mr. Griffin. The briefing attempts to, and the lawsuit attempts to sweep in events of some seven months earlier in May to a grievance that was filed in December. Again, the district court correctly analyzed that it had to do with ladders and not with the deliberate indifference. Yes, Your Honor. Here's the thing. It basically says, I'm looking at the grievance appeal form, which he filed in December, December 9th. And he's basically saying in his first grievance that he needs a medical attention and there's no easy access to the bunk and he slipped and this and that, right? Yes. And he's taking medication. So he's got medication, top bunk problem, and needing medical attention. Then he files his appeal and then they say, oh, you actually have, there should be no problem because you actually have a lower bunk assignment, they say. Yes, Your Honor. Okay. Well, whether they put him there or not is a separate issue. But they say, okay, that's the answer to that question. And then he says, no, this doesn't really work. And then there's, there's a further appeal on the 17th. And then they, no further appeal. He's released on the 18th, apparently. So I guess I'm having some trouble understanding why all of this isn't basically what his lawsuit is about. Your Honor, his lawsuit refers to the deliberate indifference to his medical needs. The grievance asks why is there no access to the top bunk, solution to provide easier access like ladders. And that, that is a different, that is a different claim. Now, Your Honor is correct that there are some vague references to injuries and medical needs. But it is not the facts that are necessary to get to the issue. It really is about, pardon me again, about the ladders. And he acknowledges, by the way, in his complaint that after this December grievance was filed, through the termination of his incarceration at the county jail, he was in a lower bunk. He does not claim that he was reassigned after the grievance was filed. Well, do you agree that you don't have to use words like deliberate indifference in order to match up a complaint? Yes, Your Honor. Like a legal lingo. Yes, Your Honor. And we have never asserted that magic words are necessary. But the facts, as the Supreme Court emphasized in the Woodford case, the facts that are necessary to develop the administrative record, you'll note in that grievance appeal that the external referee at the very last stage concludes that, well, he's not making a constitutional or a civil rights claim, he's making a claim about the ladders, and that's resolved by assigning him to the lower bunk. What did the Supreme Court say in Woodford about the purposes of the exhaustion requirement? One, it indicated that there was a need to provide an incentive to use the grievance process and give the jail a fair opportunity to correct their own errors. And there's a comity toward the state correctional systems. Certainly, the grievance didn't put the jail on notice that there was this issue of the reassignment and ignoring his medical needs, or at least the entire issue had to do, again, with the ladder. The Supreme Court also indicated that, or said, that the purpose of the exhaustion requirement was to reduce the quantity of prison litigation. Some would be successful. And they noted that some of the grievances would be successful, so we wouldn't have a lawsuit. Well, in this case... His grievance, basically, is, look, I'm on this medicine, I fell down, I need medical treatment, and at least I need easier access like ladders. That basically tracks when he says his facts in his complaint say, you know, I wanted a lower bunk, I was denied, I have medicine. And then he says, what's your injury? Well, I fell, and my back and neck were injured. And he talks about back and neck in his complaint. I mean, his grievance. Maybe you could be more precise about what you think is missing from the grievance. Well, Your Honor, he states in the most general way about injuries and medication. He doesn't say that on May, back in May, I was assigned to an upper bunk and I fell. He does not make that claim. In any event, it would have been untimely because he sat on that issue for seven months or so from May until December. And, again... Because I fell trying to climb up into my bunk. But I think the jail was reasonable in concluding that the assignment to the lower bunk addressed the issue and that that was a different question. Again, the need for a ladder was a different question than the attention to his medical needs. In the letter brief on the supplemental briefing, Mr. Griffin's counsel argued that the grievance, the one grievance that was filed, created an administrative record sufficient to tell the jail what the deliberate indifference was. And I respectfully disagree. The record in this case and all the information about the medication and the medical records, about the May events and so on, were all developed during the three years of discovery that occurred after the trial court granted the motion for reconsideration. And the trial court was very careful, the district court was very careful, in giving Mr. Griffin the opportunity to conduct the discovery. The Supreme Court also indicated in the Woodford case that part of the reason why we have the exhaustion requirement is so that the matter can be looked at while the events are fresh and memories are fresh and so on. The discovery in this case took place four to seven years after the event. And the grievance, which was really about ladders, did not put anybody on notice during the entire grievance process that the issue was the deliberate indifference. I'll answer any questions the Court has. I have nothing further. Thank you. Well, where is the deliberate indifference? You don't have to plead that, you just told me. So where in the complaint are you saying that it's at odds with the grievance? Your Honor, I said you'd – What part of the complaint? Because I'm looking at the complaint and I just want to make sure I'm looking at the right part of the complaint. Yes, Your Honor. You don't have to use the magic words in the grievance, but the grievance has to raise the facts and the description. The complaint, when you look at it, is a completely different set of allegations about the indifference to the medical needs and what happened in May, which was not grieved about. I would also point out that in analyzing this that the Supreme Court jurisdiction, including the Jones v. Bok case, which the appellants – I guess you haven't really answered my question. Oh, I'm sorry, Your Honor. I'm trying – you keep talking – you don't have to show deliberate indifference, so we've got that established. But what is it about the grievance that doesn't match the complaint? I mean, his injury is the falling. He injured his knee and his neck and back. Your Honor, let me make my position clear. You don't have to use magic words, but it is necessary in the grievance – Well, you're not going to answer the question because you're not pointing me to the complaint. Show me in the complaint. I don't want argument. I want facts so I can look to the right part of the record. If I may have a moment to pull up that part of the complaint. It's kind of a skinny complaint, like all these different forms. Yes, Your Honor. I entered the Madison Street Jail on 13099 and was seen by a classification officer on 399 – I can read that. Yes, Your Honor. That was the part – You're basically telling me you can't put facts in your complaint that explain what the background is? I mean, these are background facts. Or even the substance, even to summarize, when the complaint is on a different subject than what was grieved about. And the jurisdiction, including the Jones v. Bok case, where some grievances were exhausted, some grievances were not. I thought you were going to tell it long ago. What he grieved about was access to the top bunk, not the fact that he was placed on the top bunk. Isn't that what the record will show? Yes, Your Honor. That the ladder – he claims the ladder would have been necessary. He was not – A stabilized ladder. Wasn't he complaining that he needed a ladder that was stabilized? Yes, that's correct, Your Honor. And she wants you to point to that in the record. I'm going on memory, but it's there somewhere. I didn't make it up. Yes, Your Honor. And my difficulty is going between the complaint and the grievance. The grievance talks about the ladder. The solution is to provide a ladder. Right. The complaint alleges that there was a deliberate indifference to his medical needs dating back to the time that he was initially classified and looked at back in January, March, and May. And that's a different – that's a different – And the failure to weld a ladder, L-A-T-T-E-R, or some kind of help to get me up and down from the top bunk violates my safety, basic safety needs. So you're basically saying that that statement doesn't match the fact that he was trying to get a ladder in his grievance. That's correct. Okay. Well, it's just a question of our reading the language and making a determination. Thank you. Thank you, Your Honor. Your Honor, the county's making the same mistake that the district court did in defining the scope of Mr. Griffin's complaint by his proposed resolution. It is true that in his grievances he proposes a resolution requesting a ladder. He's required by the grievance form to propose a resolution, but that doesn't define the scope of his complaint. The crux of his complaint of the problem that he's grieving is the unsafe bunk assignment, which is the same as he alleges in his complaint at page 4 where he says he hurt himself getting down from the upper bunk, he fell and injured himself, and he was reassigned to the upper bunk. Judge Easterbrook in the Seventh Circuit has said that in interpreting the PLRA, an inmate need only hint to a potential claim. Mr. Griffin did that in this case. And in the Brown case, the case that the district court relied on, the court says the best that you can do is the best that you can do. In this case, Mr. Griffin in his grievances alleged all the facts that he had and that he thought supported his complaint, his claim for deliberate indifference, which he sets forth in his complaint. And our position is that Mr. Griffin is entitled to his day in court. Thank you. Thank you. Also, I know you are here, Mr. Sy, as part of the pro bono program as well, and we appreciate your briefing and argument. We also appreciate Mr. White's argument this morning. The case of Griffin v. Arpaio is submitted. Thank you.
judges: Wallace, Farris, McKeown